Argued and submitted August 24, 1999, affirmed February 9, 2000

# STATE OF OREGON,
*Respondent,*

*v.*

# MORGAN JOEL PERRY,
*Appellant.*

## (98-01-40848; CA A102784)

996 P2d 995

Leland R. Berger argued the cause and filed the brief for appellant.

Anne L. Cottrell, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Defendant appeals from a judgment of conviction for unlawful possession of a firearm. ORS 166.250(1). Defendant argues that there was insufficient evidence that the handgun he possessed was readily capable of use as a weapon and that, even if it was readily capable of use as a weapon, he falls within the "place of business" exception to the firearms possession statute. ORS 166.250(2)(b). We affirm.

On the evening of January 11, 1998, defendant was working alone at a convenience store in a high-crime area of northwest Portland. Portland Police Bureau officers were dispatched to the store in response to a complaint involving a firearm. On arrival, one of the officers asked defendant if he possessed a gun. Defendant responded that he was carrying a pistol in a holster behind him. The cover officer took a 9mm handgun from defendant without incident. A second gun, belonging to the owner of the store, was kept in a drawer near the cash register. The owner testified that his gun did not work. One of the officers then made sure defendant's handgun was safe and performed a function check on it. Defendant admitted that he did not have a license to carry a concealed handgun and expressed surprise when he was cited because he did not think a license was required to carry a concealed handgun on the job. The weapon was not test fired nor was it presented at trial.

Defendant was charged with unlawful possession of a firearm, ORS 166.250, menacing, ORS 163.190, and pointing a firearm at another, ORS 166.190. After the latter two charges were dismissed, the case was tried to the court. Defendant was convicted and sentenced to one year of bench probation for unlawful possession of a firearm under ORS 166.250(1)(a).[1]

---

[1] ORS 166.250 provides, in part:

"(1) Except as otherwise provided in this section, ORS 166.260, 166.270, 166.274, 166.280, 166.291, 166.292 or 166.410 to 166.470, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a) Carries a firearm concealed upon the person, without having a license to carry the firearm as provided in ORS 166.291 and 166.292[.]"

On appeal, defendant first argues that the trial court erred in concluding that there was sufficient evidence to find that the firearm was readily capable of use as a weapon, as defined in ORS 166.210(2). Our task, therefore, is to determine whether the evidence, viewed in the light most favorable to the state, is sufficient for a rational trier of fact to find, beyond a reasonable doubt, that the firearm was readily capable of use as a weapon. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994).

■       Defendant argues that the state failed to prove that the handgun seized in this case was readily capable of use as a weapon because the state did not test fire the weapon, did not define "function check," or indicate whether the handgun passed or failed that test. The state is not required to test fire a handgun to prove that it is readily capable of use as a weapon. *State v. Wise*, 150 Or App 449, 452, 946 P2d 363 (1997) (testimony regarding firearms' serviceability for hunting was sufficient to deny defendant's motion for acquittal); *State v. Turechek*, 74 Or App 228, 233, 702 P2d 1131 (1985) (evidence that a gun cycles and all the parts necessary to fire it are in working order is enough to establish that a gun is readily capable of use as a weapon).

■■       It is true that the state did not explain what a function check is or what that test revealed. However, in determining whether evidence is sufficient, we consider all of the undisputed facts and all reasonable inferences. *State v. Woodson*, 315 Or 314, 320, 845 P2d 203 (1993). Here, defendant was cited for unlawful possession of a firearm after the function check was performed. He knew that the gun provided by owner did not work and was surprised to learn that a license is needed to carry a concealed handgun at work. Finally, the circumstances of defendant's employment and the manner in which he carried the gun are consistent with an intent to protect himself and owner's property. These facts, taken together, permit a trier of fact to find beyond a reasonable doubt that the officer found the handgun in working condition. The trial court did not err in concluding that defendant's handgun was readily capable of use as a weapon.

In his second assignment of error, defendant argues that the trial court misconstrued the "place of business" exception to the unlawful possession of a firearm in ORS 166.250(2)(b).[2] The trial court determined that, in order to invoke the "place of business" exception, a person must show ownership or some indicia of ownership in the business, and, because defendant is merely an employee, the exception does not apply to him. Defendant argues that "place of business" provides no statutory basis for distinguishing between owners and employees. Defendant further argues that construing the exception so narrowly violates his right to bear arms under Article I, section 27, of the Oregon Constitution, and, by implication, the Second Amendment to the United States Constitution. Finally, defendant asserts that requiring a person to show ownership or indicia of ownership in the business violates the privileges and immunities clause of Article I, section 20, of the Oregon Constitution.

We begin with defendant's statutory argument, to which the state's response is two-fold. First, the state argues that ORS 166.250(2)(b) is not an exception to the prohibition against carrying a concealed firearm without a license. Second, the state argues that, even if the statute does allow some unlicensed persons to carry concealed firearms in their place of business, defendant is not a member of the excepted class. In either event, the state asserts that the trial court correctly construed the phrase "place of business" as connoting ownership and therefore properly ruled that defendant, as a nonowner employee, was not cited in his "place of business" as that phrase is used in ORS 166.250(2)(b).

ORS 166.250(2)(b) was enacted in 1925.[3] Or Laws 1925, ch 260, § 5. Somewhat surprisingly, it has never been

---

[2] ORS 166.250(2)(b) does not prohibit

"[a]ny citizen of the United States over the age of 18 years who resides in or is temporarily sojourning within this state, and who is not within the excepted classes prescribed by ORS 166.270 and subsection (1) of this section, from owning, possessing or keeping within the person's place of residence or place of business any handgun, and no permit or license to purchase, own, possess or keep any such firearm at the person's place of residence or place of business is required of any such citizen."

[3] In its original form, the language at issue was essentially identical to language adopted by the California Legislature two years earlier. Cal Stats 1923, ch 339, § 5. The California provision, now codified at Cal Penal Code Section 12026, was intended to occupy the field of firearms regulation in that state. *Galvan v.*

construed by an Oregon appellate court. To do so, we first examine the text in context because that is "the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Our role is "simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." ORS 174.010. The words of a statute are given their plain, natural and ordinary meaning. *PGE*, 317 at 611. If the legislature's intent is not clearly expressed in the text and context of the statute, then we may also consider its legislative history. *Id.* Finally, if the statute's meaning remains unclear, then we may invoke pertinent maxims of construction. *Id.* at 612.

Defendant's appeal, and the state's response concerning the scope and effect of ORS 166.250(2)(b), require us to analyze the statute at two levels. First, we must determine whether ORS 166.250(2)(b) provides an exception to the unlawful possession of firearms. If we determine that the statute provides an exception, we must then determine whether that exception applies to defendant. We begin with the language of ORS 166.250(1), which makes the possession of firearms unlawful in certain circumstances. One of those

---

*Superior Court of City and County of San Francisco*, 70 Cal 2d 851, 76 Cal Rptr 642, 452 P2d 930 (1969) (Penal Code § 12026 intended to prevent circumscribing the right to possess concealable weapons in a person's place of residence or place of business); *Doe v. City and County of San Francisco*, 136 Cal App 3d 509, 518, 186 Cal Rptr 380, 385 (1982) (Penal Code § 12026 occupies the field of residential handgun regulation). It is likely that the language now codified at ORS 166.250(2)(b) was intended to serve a similar function in Oregon because of uncertainty about the scope of Oregon's home rule amendments, Article IV, section 1a (now section 1(5)) and Article XI, section 2. That uncertainty was caused by inconsistent supreme court rulings. *See* John P. Ronchetto and Wayne Woodmansee, *Home Rule in Oregon*, 18 Or L Rev 216, 218 (1939) (cited for this proposition in *State ex rel Heinig v. Milwaukie*, 231 Or 473, 477 n 5, 373 P2d 680 (1962)).

The fact that the ORS 166.250(2)(b) may serve the same purpose in Oregon that it does in California does not foreclose a finding that it also provides an exception to the unlawful possession of firearms. Further reference to California case law illustrates the point. On facts similar to those presented here, a California appellate court determined that a liquor store clerk, arrested for carrying a concealed handgun at work without a license, was not in his "place of business" as that phrase was used in Penal Code Section 12026. *People v. Melton*, 206 Cal App 3d 580, 253 Cal Rptr 661 (1988). In 1989, in response to *Melton*, the California Legislature amended the statute and adopted a statement of purpose, specifying that *Melton* could not be read as requiring individuals with a proprietary, possessory, or substantial ownership interest in a business to obtain a license before carrying a concealed firearm at their place of business. Cal Stats 1989, ch 958, § 2.

circumstances is "[carrying] a firearm concealed upon the person" without a license as provided in ORS 166.291 and ORS 166.292.[4]

In order for ORS 166.250(2)(b) to be an exception to the conduct proscribed by ORS 166.250(1)(a), it must in some manner allow persons to carry a firearm concealed on their persons without a license. We note that the statute does not expressly negate the prohibition against carrying firearms concealed upon the person without a license. Accordingly, support for defendant's position, if it is to be found, must derive from language negating any prohibition against "owning, possessing or keeping" a handgun at one's place of residence or place of business. In an effort to discern the plain, natural, and ordinary meaning of those terms we turn to the dictionary. To "own" is "to have or hold as property or appurtenance: have a rightful title to, whether legal or natural." *Webster's Third New Int'l Dictionary*, 1612 (unabridged ed 1993). To "possess" is "to take into one's possession: seize or gain control of: to make one's own." *Id.* at 1770. And finally, to "keep" is to "cause to remain in a given place, situation, or condition: maintain unchanged: hold or preserve in a particular state." *Id.* at 1235.

■   The state argues that "owning, possessing or keeping" a handgun are different from carrying one concealed and that reading ORS 166.250(2)(b) as an exception to ORS 166.250(1)(a) violates ORS 174.010 by inserting the words "carry concealed." The state's argument fails because each of the defined terms can be read consistently with carrying a concealed firearm. The term "possess," in particular, is inclusive because the act of carrying a concealed handgun is an entirely contained subset of possession. Stated another way, one who carries a concealed handgun always "possesses" the handgun. Accordingly, as relevant here, we hold that ORS 166.250(2)(b) provides an exception to the statutory prohibition in ORS 166.250(1)(a) against carrying a concealed firearm for persons who do so in their place of business.[5]

---

[4] The 1999 Legislature amended both ORS 166.250(1)(a) and ORS 166.260(1). Or Laws 1999, ch 1040, §§ 1, 3. ORS 166.250(1)(a) now makes it unlawful to carry "any firearm concealed upon the person." ORS 166.260(1)(h) provides an affirmative defense for persons licensed under ORS 166.291 and ORS 166.292.

[5] Concluding otherwise could raise serious constitutional concerns. *See State v. Stevens*, 113 Or App 429, 833 P2d 318 (1992) (convicting a person arrested in his

Having determined that ORS 166.250(2)(b) provides a limited exception to the concealment prohibition in subsection (1)(a) of the statute, we turn to the state's alternative argument that the statute does not apply to defendant. The parties agree that the question presented is whether defendant was in his "place of business" when he possessed the firearm concealed on his person. Therefore, we return to the first level of the *PGE* analysis in an attempt to discern the plain, natural, and ordinary meaning of the words at issue. 317 Or at 611. "Place" is defined in this context as "a building or locality used for a special purpose." *Webster's* at 1727. Here, of course, that purpose is "business," which is defined as "a [usual] commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision." *Id.* at 302. Thus, the issue reduces to how much independence of judgment and power of decision a person must exercise before a locality may be termed that person's place of business. Defendant argues that, as a lone employee staffing a convenience store, he exercises the same independent judgment and power of decision as the owner. The only difference, according to defendant, is that he lacks authority to sell the owner's business. The state contends that defendant, as a nonowner, simply does not qualify for the exception.

■   The parties do not identify, nor do we find, strong contextual support favoring either side's interpretation of "place of business." Context may be found in other provisions of the same statute and related statutes, prior judicial interpretations of those related statutes, prior enactments, and the historical context of those relevant enactments. *Young v. State of Oregon*, 161 Or App 32, 35-36, 983 P2d 1044 (1999). None of those sources is particularly helpful in ascertaining what, precisely, the legislature meant by "place of business." We therefore conclude that "place of business" is reasonably capable of both constructions.

place of residence for possession of a concealed switchblade infringes on the defendant's right to bear arms under Article I, section 27). It would be inconsistent with *Stevens* to conclude that a person violates ORS 166.250(1)(a) by possessing a concealed handgun in his or her place of residence, which would be the inevitable result of a conclusion that ORS 166.250(2)(b) does not function as an exception to ORS 166.250(1)(a).

Normally, at this point, we would examine the legislative history of the disputed statute for guidance. *PGE*, 317 Or at 611-12. However, any legislative history concerning the scope of ORS 166.250(2)(b) was lost in the 1935 State Capitol Building fire.[6] Therefore, in keeping with the *PGE* methodology, we resort to the maxim of statutory construction that requires us to determine how we think the legislature would have applied the statute had it considered whether employees are covered by the exception. 317 Or at 612 (citing *Security State Bank v. Luebke*, 303 Or 418, 423, 737 P2d 586 (1987)).

■ In 1925, the legislature made it unlawful for persons to possess any firearm by carrying it concealed without a license.[7] Or Laws 1925, ch 260, § 5, now codified at ORS 166.250(1)(a). The licensing requirement ensures that persons who carry a concealed handgun are minimally competent. Though ORS 166.250(2)(b) provides a limited exception to the licensing requirement, in the absence of definitive evidence regarding the scope of ORS 166.250(2)(b), we are guided by a desire not to undermine the legislature's prohibition against unlicensed persons carrying concealed firearms. The ability of employees to secure a concealed handgun license when their employer believes it is appropriate for the employee to be armed also factors in our holding. Finally, we note that the modern business landscape is vastly different from that which existed in 1925, a point reflected by the various amendments to ORS 166.250. Many businesses today

---

[6] Comments attributed to Representative Frank Lonergan, the sponsor of HB 452, indicate the measure, which was intended to curb "lawbreakers and as a protective measure for innocent persons, does not infringe on target shooters and others legitimately possessing and using firearms." *The Capital Journal* at 3 (January 20, 1923). The focus of the bill, which passed with the approval of the United States Revolver Association, was a minimum five-year sentence for criminals convicted of concealing a weapon on their person during the commission of a crime. *The Capital Journal* at 3 (February 19, 1923).

[7] License applications are reviewed by county sheriffs, and licenses are issued to applicants who meet specified criteria. ORS 166.291. Before 1989, licenses to carry concealed firearms were issued, at the county sheriff's discretion, to those who could demonstrate a need. *Former* ORS 166.290, *repealed by* Or Laws 1989, ch 839, § 7. The new legislation, House Bill 3470, amended the statutory scheme, providing, *inter alia*, that licenses to carry concealed firearms *shall* be issued to persons who successfully complete the prescribed criminal and mental health background check. Or Laws 1989, ch 839, § 8; ORS 166.291(1).

employ dozens, and in some cases thousands, of employees, and, in our view, it would be inconsistent with the overall scheme of firearms regulation, as it has evolved, to interpret the law in a way that allows those employees to carry a concealed weapon without a license. In short, if every employee who exercises some degree of responsibility or authority in the work place were exempted from the licensing requirement, then the legislative intent behind that requirement would be substantially defeated. We are, therefore, persuaded that the legislature did not intend the phrase "place of business" to include employees and hold that nonowner employees who carry a concealed handgun must first apply for and obtain a license to do so in accordance with ORS 166.191 and ORS 166.192.

■    Defendant also argues that the trial court's narrow interpretation of "place of business" interferes with his right to bear arms under Article I, section 27, of the Oregon Constitution and, by implication, the Second Amendment to the United States Constitution. We disagree. As the state correctly points out, defendant does not argue that the restriction on the right to bear arms contained in ORS 166.250(1)(a) is unconstitutional. As a logical matter, if the general prohibition against possessing a concealed firearm without a license is constitutional, then it follows that ORS 166.250(2)(b), which allows greater freedom to possess firearms, cannot be unconstitutional.

■    Finally, defendant contends that interpreting "place of business" to distinguish between owners and employees in this context violates the privileges and immunities clause of Article I, section 20, of the Oregon Constitution, as well as equal protection under the Fourteenth Amendment to the United States Constitution. However, defendant concedes that, as an employee, he is not a member of a "true class." *See Northwest Advancement v. Bureau of Labor*, 96 Or App 133, 142, 772 P2d 934, *rev den* 308 Or 315 (1989), *cert den* 495 US 932 (1990). Thus, defendant must show that there is no rational basis for distinguishing between business owners and employees when regulating the possession of firearms. *City of Salem v. Bruner*, 299 Or 262, 271, 702 P2d 70 (1985).

Defendant's argument fails because it is rational for the legislature to generally require Oregon citizens who carry concealed firearms to demonstrate their competence by requiring them to obtain a license, while, at the same time, allowing business owners to possess a weapon at their place of business to protect their property.

Affirmed.