Argued and submitted January 31, reversed March 22, 2006

STATE OF OREGON,
*Respondent,*

*v.*

SHAWN HARKINS LESLIE,
*Appellant.*

D0205075M; A123065

132 P3d 37

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Erika L. Hadlock, Assistant Solicitor General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from a judgment of conviction for two counts of unlawful possession of a firearm, ORS 166.250, based on defendant's possession of two handguns that were found concealed, but readily accessible, in a truck in which defendant lived. Defendant contends, in part, that the trial court erred in denying his motion for judgment of acquittal based on the "place of residence" exception set out in ORS 166.250(2)(b). We agree with defendant that his truck was his "place of residence" for purposes of ORS 166.250(2)(b). Consequently, we reverse.[1]

The material facts are undisputed. Defendant owns a pickup truck with a canopy cover over the bed of the pickup. As of September 9, 2002, defendant had been living in his truck for "several years." He considered it his home, and he normally ate, slept, and studied for his college courses there.

At approximately 1:00 a.m. on September 9, Detective William Napieralski of the Tigard Police Department approached defendant's truck because it was parked in a parking lot away from other vehicles. As Napieralski approached the truck, he saw that defendant was sleeping inside. Napieralski also saw food, clothing, books, garbage bags, and a sleeping bag inside the truck; to Napieralski, it appeared that defendant was "living within [the] vehicle."

Napieralski knocked on a window, awaking defendant. The two then spoke, and defendant admitted to having guns in the truck. Napieralski subsequently found two handguns, a Ruger .44 magnum and a Smith & Wesson .357 magnum, on the floorboard of the passenger side of the truck covered by various items, within defendant's reach. Defendant did not have a concealed weapons permit. When Napieralski

---

[1] Defendant also contends that he was alternatively entitled to a judgment of acquittal on the ground that the state had failed to prove that the handguns found in the truck were operable and, thus, constituted "firearms" within the meaning of ORS 166.210(2) (defining a "firearm" as "a weapon, by whatever name known, which is designed to expel a projectile by the action of powder and which is readily capable of use as a weapon"). Given our disposition, we do not address that alternative argument.

asked defendant why he had the weapons, defendant explained, "I got to protect myself. That's my house."

Defendant was charged with two counts of unlawful possession of a firearm, ORS 166.250(1), which provides, in part:

"(1) Except as otherwise provided * * * a person commits the crime of unlawful possession of a firearm if the person knowingly:

"* * * * *

"(b) Possesses a handgun that is concealed and readily accessible to the person within any vehicle[.]"

At trial, defendant argued that, because he lived in his truck, his possession of the guns fell within the "place of residence" exception of ORS 166.250(2)(b). That provision reads as follows:

"(2) This section does not prohibit:

"* * * * *

"(b) Any citizen of the United States over the age of 18 years who resides in or is temporarily sojourning within this state * * * from owning, possessing or keeping within the person's place of residence or place of business any handgun, and no permit or license to purchase, own, possess or keep any such firearm at the person's place of residence or place of business is required of any such citizen. As used in this subsection, 'residence' includes a recreational vessel or recreational vehicle while used, for whatever period of time, as residential quarters."

Defendant moved for a judgment of acquittal on that ground, and the trial court denied that motion. Thereafter, the trial court convicted defendant on both of the charged counts.

On appeal, defendant renews his argument that, because the undisputed evidence established that his truck was his "place of residence," he was entitled to a judgment of acquittal. The success of defendant's argument depends on the resolution of a question of statutory construction.[2] In construing ORS 166.250(2)(b), we apply the methodology prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or

---

[2] The question of whether a truck can be a "place of residence" is a matter of first impression in Oregon and is, apparently, unresolved in other jurisdictions as well. *See* W. M. Moldoff, *Offense of Carrying Concealed Weapon as Affected by*

606, 610-12, 859 P2d 1143 (1993), beginning with the "first level" analysis of the statutory text as viewed in context. *Id.*

The original antecedent of ORS 166.250, including the "place of residence" exception, was enacted in 1925. As originally enacted, the statute read as follows:

"Except as otherwise provided by this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm[.] * * * This section shall not be construed to prohibit any citizen of the United States, over the age of eighteen years, who resides or is temporarily sojourning within this state * * * from owning, possessing or keeping within his place of residence or place of business any pistol, revolver or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his place of residence or place of business shall be required of any such citizen."

Or Laws 1925, ch 260, § 5.[3] Consequently, we begin by attempting to discern the common understanding of the term "place of residence" in 1925. *See State v. Perry*, 336 Or 49, 52-53, 77 P3d 313 (2003) (construing scope of "place of business" exception in ORS 166.250(2)(b): "In interpreting * * * a statute enacted many years ago," the court is to "seek to discern the intent of the legislature that passed [the] statute."). Dictionaries in use at the time of the enactment may be particularly useful in that inquiry. *Id.* at 53 (referring to various contemporaneous dictionary definitions to discern the meaning of the "place of business" exception).

Here, the parties proffered different definitions as support for their contending constructions of "residence."

---

*Manner of Carrying or Place of Concealment*, 43 ALR 2d 492 (2005) (canvassing case law).

[3] The legislature added the language stating that " 'residence' includes a recreational vessel or recreational vehicle while used, for whatever period of time, as residential quarters" in 1985. Or Laws 1985, ch 543, § 3. Defendant does not contend that his pickup truck was a "recreational vehicle" as that term is used in ORS 166.250(2)(b). *Cf.* ORS 446.003(33) defining "recreational vehicle" as a vehicle "that is designed for human occupancy and to be used temporarily for recreational, seasonal or emergency purposes and, as further defined, by rule[.]"

Defendant contends that a person's "place of residence" is, simply, where he or she lives, routinely performing the ordinary activities of daily living, and invokes the following definition:

> "2 a (1) : the place where one actually lives or has his home as distinguished from his technical domicile (2) : a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit (3) : a domiciliary place of abode * * *.
>
> *"Webster's Third New Intl'l Dictionary* 1931 (unabridged ed 1993)."

The state counters that, in common understanding circa 1925, "place of residence" connoted a "fixed structure":

> "According to a contemporaneous dictionary, the concept of a person's 'place of residence' was not so broad as to encompass any place a person sleeps at night. The 1926 edition of *Bouvier's Law Dictionary* defined 'residence' as: 'Personal presence in a *fixed* and permanent abode.' * * * An 'abode' was '[w]here a person dwells.' *Id.* at 27. And the same dictionary defined 'place' as 'associated with objects which are, in their nature *fixed* and territorial.' *Id.* at 941 (emphasis added). Taken together, those definitions suggest that the legislature used the phrase 'place of residence' to mean a fixed or permanent dwelling, *i.e.*, a structure like a house."[4]

(Emphasis added by the state.) The state further argues that, to give "place of residence" the meaning that defendant urges would defeat the legislature's original intent, in 1925, of "carv[ing] out a limited and specific exception" to "the comprehensive prohibition of concealed weapons[.]" *Perry*, 336 Or at 55-56. Finally, the state asserts that, if defendant were correct, there would have been no need for the 1985 legislature to have amended ORS 166.250(2)(b) to specifically provide that "residence" includes "recreational vehicles" and "recreational vessels."

---

[4] The state's understanding of a "fixed structure" is literal. At oral argument, in response to a question posing a hypothetical, counsel for the state expressed the view that, if a person pitched a tent on his or her own property and lived in the tent for a year, the tent would not be the person's "residence" because it was not a "fixed structure."

At the outset, we acknowledge—and, indeed, emphasize—that "residence," as used in the 1920s, had two distinct meanings. The first connoted "legal residence," *i.e.*, "[p]ersonal presence in a fixed and permanent abode." *Bouvier's Law Dictionary* 1061 (1926). The second usage connoted "actual residence," *i.e.*, "[t]he abode where one actually lives[.]" *Id.*; *see also* Benjamin W. Pope, 2 *Legal Definitions: A Collection of Words and Phrases as Applied and Defined by the Courts, Lexicographers and Authors of Books on Legal Subjects* 1398 (1920) (distinguishing between "legal residence" and "actual residence"). Indeed, Bouvier's 1926 *Law Dictionary*, which the state cites in part, includes both concepts in its definitions of "residence":

> "[1] Personal presence in a fixed and permanent abode.
>
> "[2] The abode where one actually lives, not the legal domicile."

*Id.* at 1061 (citations omitted).

As a general matter of statutory construction, we ordinarily assume that, when the same statute uses closely similar terms, those terms have a consistent meaning throughout. *PGE*, 317 Or at 611. However, when viewed in context, it becomes apparent that "resides" and "place of residence," as used in language that remains unchanged from the original version of the statute had, and have, different meanings. The operative language, from the 1925 version of the statute, stated:

> "This section shall not be construed to prohibit any citizen of the United States, over the age of eighteen years, who *resides* or is temporarily sojourning within this state * * * from owning, possessing or keeping within his *place of residence* or place of business any * * * firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his *place of residence* or place of business shall be required of any such citizen."

(Emphasis added.)

The first reference—distinguishing a person who "resides" in this state from one who is "temporarily sojourning within the state"—connotes legal residence (*i.e.*, an Oregon resident as opposed to a non-Oregon resident who is temporarily living in Oregon). The second and third references—the "place of residence" in Oregon for either the Oregon resident or the non-Oregon resident who is "temporarily sojourning within the state"—necessarily connote actual residence (*i.e.*, where the person is actually living). Because the statute explicitly contemplates that persons who do not "reside" in Oregon can, nevertheless, have a "place of residence" within Oregon, "residence" as used in the term "place of residence" must connote actual residence, and not legal residence.[5]

With the statute properly so understood, we return to the common contemporaneous understanding of "actual residence." As noted, Bouvier's 1926 *Law Dictionary* defines "residence" as "[t]he abode where one actually lives[.]" *Id.* at 1061. The same source defines "abode" as the place "[w]here a person dwells" and "place of abode" as the place "where [a person] lives with [his or her] family and sleeps at night[.]" *Id.* at 27. Another source states that the "[o]rdinary meaning" of "residence" is "the place where an individual eats, drinks, and sleeps, or where [his or her] family or * * * servants eat, drink, and sleep[.]" *Wharton's Law Lexicon* 744 (13th ed 1925) (internal quotation marks omitted). Yet another contemporaneous lexicon states that " 'residence' is synonymous with 'abode,' " which, in turn, means the place "where [a person] lives with [his or her] family and sleeps at night[.]" Pope, 2 *Legal Definitions* at 1181, 1398. Finally, the 1930 edition of *Ballantine's Law Dictionary* defines "residence" as "[a]ny place of abode or dwelling place, however temporary it

---

[5] That understanding is corroborated by the "fixed and permanent" character of legal residence. If "place of residence" as used in ORS 166.250(2)(b) meant "place of legal residence"—requiring "a fixed and *permanent*" abode—a person "*temporarily* sojourning within" Oregon could never have a "place of residence" in Oregon. "Permanent" and "temporarily" are irreconcilable. And yet, ORS 166.250(2)(b) is explicitly to the contrary—it expressly states that a person temporarily sojourning within Oregon can have a "place of residence." Thus, again, "place of residence" must connote place of actual residence.

may be," and defines "actual residence" as "[t]he place a [person] actually inhabits, where [he or she] actually lives or resides." *Id.* at 29-30.

In sum, "place of residence" as used in ORS 166.250(2)(b) means the place where a person actually lives, *i.e.*, where he or she regularly eats, drinks, and sleeps. Further, and contrary to the state's contention, as commonly understood in 1925, that term was not qualified by a requirement that the place of residence be a "fixed and permanent" structure.[6] Finally, we reject the state's contention that, to so construe "place of residence" will fatally subvert the legislative scheme, permitting the exception to swallow the prohibition. Although there is no surviving legislative history from 1925, the inclusion and maintenance of protection for the "place of residence" of even those persons "temporarily sojourning" within this state powerfully evinces a legislative intent to permit persons to possess concealed weapons where they live.

Here, it is undisputed that defendant did, in fact, live in his truck—and had done so, exclusively, for several years.[7] Accordingly, defendant's truck was his "place of residence," and the trial court should have granted his motion for judgment of acquittal based on ORS 166.250(2)(b).

Reversed.

---

[6] As noted, the state derived the "fixed and permanent" requisite from definitions of legal residence, not actual residence. Further, even in defining legal residence, "fixed and permanent" are used in a temporal, and not a physical or structural, sense.

[7] Given those circumstances, we need not determine in what circumstances, other than those described in the "recreational vehicle" and "recreational vessel" provision, a person might have more than one "place of residence" for purposes of ORS 166.250(2)(b). For the same reason (and, again, putting aside the explicit statutory provision governing "recreational vehicles" and "recreational vessels"), we need not attempt to determine in this case whether there is any minimum legally sufficient period of "actual residence" for purposes of ORS 166.250(2)(b).