IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property

| | | |
|---|---|---|
| FIRST IMMANUEL EVANGELICAL LUTHERAN CHURCH, | ) ) ) | |
| Plaintiff, | ) ) | TC-MD 230362R (Control) |
| v. | ) ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) ) ) | |
| FIRST IMMANUEL EVANGELICAL LUTHERAN CHURCH, | ) ) ) ) | |
| Plaintiff, | ) ) | TC-MD 230363G |
| v. | ) ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) ) | **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendant. | ) | |

This matter is before the court on cross-motions for partial summary judgment regarding the 2022-23 property tax year. Two issues are before the court: (1) Whether Plaintiff was required to file a new application for a property tax exemption after its exempt lessee terminated its lease, and (2) whether Plaintiff's late filing for the exemption should have been accepted. Oral argument was held remotely on December 7, 2023.

## I.   STATEMENT OF FACTS

The facts in this matter are not in dispute. This matter involves a property tax exemption for property located at 1816 NW Irving Street, Portland, Oregon, property account number

R140901 (the subject property) for the 2022-23 tax year.[1] Plaintiff is a religious organization exempt from federal income taxation pursuant to Sections 501(a) and 501(c)(3) of the Internal Revenue Code (IRC), and it qualifies as a religious organization pursuant to ORS 307.140. Plaintiff's property includes a main church, its grounds, and Sodergren Hall (subject property). Historically, Plaintiff, or its lessees, have received property tax exemptions for all buildings, including the subject property.

On July 1, 2020, Plaintiff leased the subject property to Rose Haven, a nonprofit organization that operated a day shelter for women and children. Rose Haven had an exemption on file for the Subject Property based on the lease with Plaintiff. Under the lease terms, Rose Haven was permitted use of the lower floor of Sodergren Hall and a portion of the church building identified in the lease as "Fellowship Hall." The lease term was from July 1, 2020, to December 31, 2022. However, on March 1, 2022, Rose Haven's executive director sent a letter to Plaintiff indicating that it would, and actually did, terminate the lease effective March 31, 2022. Plaintiff then initiated cleaning and repairs to prepare the property for future tenants. During this time, Plaintiff did not inform Defendant that Rose Haven had vacated the property.

On December 28, 2022, Defendant mailed a letter to Rose Haven, reminding them that the lease on file was set to expire December 31, 2022, and a new application would be required to maintain the exemption. Rose Haven responded to Defendant by email on January 3, 2023, stating that it had vacated the subject property on March 31, 2022.

On April 18, 2023, Defendant notified Plaintiff of its intent to assess property taxes for the subject property formerly leased to Rose Haven, for the 2022-23 tax year. On May 9, 2023, Defendant sent a notice correcting the tax roll for the real market value of the subject property to

---

[1] The disqualification on appeal in TC-MD 230362R does not identify Account R140906, which is the subject property on appeal in TC-MD 230363G.

$14,984.07. (Compl at 3.) In response, Plaintiff's treasurer filed an application for a property tax exemption for the subject property on June 14, 2023, for the 2022-23 tax year, along with a late filing fee of $989.23. On July 21, 2023, Defendant denied Plaintiff's application for property tax exemption, citing noncompliance with the late filing provisions under ORS 307.162.[2] Plaintiff subsequently filed an appeal with the Magistrate Division of the Oregon Tax Court on August 2, 2023, disputing the assessment of taxes on the portion of property formerly leased to Rose Haven.

Plaintiff's operations are overseen by Pastor Wagnor and Pastor Church, a Congregation Council, and various committees. In October 2021, Pastor Wagnor's parents passed away, and Plaintiff reduced church services due to COVID-19 related restrictions. Plaintiff continued to follow these restrictions until April 2022. From 2021 to 2022, Plaintiff's property, experienced several instances of trespassing and vandalism. These incidents included individuals breaking into garbage dumpsters, scattering trash across the premises, stealing garbage enclosure lids, breaking windows, and harassing church members. In response, Plaintiff employed a security patrol company from January 2021 to April 2022.

## II. ANALYSIS

This case presents two issues: (1) whether ORS 307.166(3)(b) required Plaintiff to file a new property tax exemption application for the 2022-23 tax year after the lease with a tax-exempt tenant was terminated, and (2) whether ORS 307.162(2)(b)(A) provides relief for Plaintiff's late property tax exemption application, filed June 14, 2023, for the 2022-23 tax year.

A. *The Termination of a Lease Qualifies as a Change in the Use of Property*

Religious organizations may qualify for ad valorem property taxation exemptions under

---

[2] All references to the Oregon Revised Statutes (ORS) are to the 2021 edition unless otherwise noted.

ORS 307.140. To obtain the exemption, religious organizations must file an application with the taxing authority in accordance with ORS 307.162. Under ORS 307.162(1)(a), the applicant "must file a claim with the county assessor, on or before April 1 preceding the tax year for which the exemption is claimed." If an exempt organization misses the filing deadline, ORS 307.162 offers alternative filing options under ORS 307.162(2)(a)-(b)(A).

Religious organizations may lease property to another entity that qualifies for a property tax exemption, subject to certain conditions under ORS 307.166. In such cases, the lessee is responsible for completing the exemption application under ORS 307.166(2). However, a new application for exemption is not required during the lease term if the "use of the property remains unchanged." ORS 307.112(5)(a), (b). If the use changes, a new claim must be filed.

The subject property was exempt while Rose Haven leased it. ORS 307.166. After Rose Haven terminated its lease and vacated the property, Plaintiff assumed that its exemption remained in effect and that no new application was required. Plaintiff argues that the term "use" in ORS 307.166(3)(b) could apply to either the lessee or lessor, creating ambiguity.[3] Defendant, however, contends that the statute is unambiguous and requires a new application when there is a change in the use of the property. ORS 307.166 does not define "use," so the court must interpret its meaning in the context of the statute.

When interpreting a statute, the court follows the framework established in *State v. Gaines,* 346 Or 160, 171, 206 P3d 1042 (2009); *Delta Air Lines, Inc. v. Dept. of Rev.*, __ OTR __ (Aug 23, 2023) (emphasizing the application of the *Gaines* framework to statutes that impose a

---

[3] ORS 307.166(3)(b) provides that "[t]he exemption continues as long as the ownership and use of the property remain unchanged and during the period of the lease, sublease or other grant of use and possession. If either the ownership or use changes, a new claim must be filed as provided in this section. If the lease, sublease or other grant of use and possession expires before July 1 of any year, the exemption terminates January 1 of the same calendar year."

tax or create an exemption).  This requires the court to first examine the text's plain meaning and context, and if necessary, consider legislative history.  *Gaines*, 346 Or at 171, 172.  Neither party has provided legislative history in this case, so the court will focus on the text and context of ORS 307.166(3)(b).

In the absence of a statutory definition, courts typically look to the plain and ordinary meanings of terms, as found in the contemporaneous dictionaries.[4]  See, *State v. Perry,* 336 Or 49, 53, 77 P3d 313 (2003) (the court turned to *Webster's Third International Dictionary*, which defines "use" as, among other things, the "continued or repeated exercise or employment" or the "the privilege or benefit of using something." (citation omitted.)

The court must determine whether a change in "use" of the subject property occurred.  Contrary to Plaintiff's argument, the plain meaning of "use" does not suggest an ambiguity.  The term clearly refers to the actual use of the property itself.  During the lease, the property was used as a day shelter.  Once the lease terminated and Rose Haven vacated, that specific use ended.  Interpreting "use" as applying to either the lessor or lessee would undermine the purpose of ORS 307.166, which provides exemptions based on the property's use during a lease.

This court's previous decisions support the interpretation that "use" applies to the property itself.  For example, in *Erickson and Alvord-Taylor Inc. v. Dept. of Rev. and Lane County Assessor*, 17 OTR 324, 329 (2004), the court found that the use of the property changes when a lessee subleases the property.  Similarly, in *Woman's Convalescent Home Ass'n Found. v. Dept. of Rev.*, 9 OTR 190, 193 (1982), the court held that when a lessee vacates a property, it constitutes a change in use.  Rose Haven's early departure mirrors the circumstances in *Woman's*

---

[4] When the legislature uses technical terminology drawn from a specialized trade or field, the court will consider specialized dictionaries.  *Comcast v. Dept. of Rev.,* 356 Or 282, 296, 337 P.3d 768 (2014).  Here, the legislature is not intending a specialized term of art, therefore we consider only the plain meaning.

*Convalescent*, and thus, Plaintiff was required to file a new property tax exemption application in compliance with ORS 307.162.

The court also considers the context in which "use" appears within ORS 307.166. This statute applies to properties leased by an exempt organization to another exempt organization. While Plaintiff correctly notes that ORS 307.166(2) makes the lessee responsible for filing the exemption during the lease term, Plaintiff erroneously claims that ORS 307.166(3)(b) creates ambiguity regarding who must file the exemption application when the lease ends or the use of the property changes. Once the lease ends or use changes, ORS 307.166 no longer applies, and the property owner must file a new application in accordance with ORS 307.162. There is no ambiguity, as the lessee is no longer leasing the property, which changes its use. Therefore, Plaintiff was required to file a new exemption application.

B.      *ORS 307.162(2)(a) as Relief for Late-Filed Property Tax Exemption Applications*

An exempt organization must file its exemption application by April 1 of the year preceding the tax year for which the exemption is claimed. ORS 307.162(1)(a). If the property is acquired between March 1 and July 1, the claim must be filed within 30 days of the acquisition. ORS 307.162(1)(c). Plaintiff did not meet any of these deadlines.

ORS 307.162(2)(a)-(b)(B) offers limited relief for late-filed applications. For the current tax year, a late application can be submitted by December 31 with the required late fee. ORS 307.162(2)(a)(A). If this deadline is missed, a late application may be submitted by April 1 if the party demonstrates "good and sufficient cause," is a first-time filer or is a public entity. ORS 307.162(2)(a)(B).

///

///

Plaintiff missed both deadlines and has not demonstrated that the impact of COVID-19, personal tragedies of its employees, or property crimes constitute "good and sufficient cause." Additionally, Plaintiff is clearly not a first-time filer or a public entity.

Alternatively, a late application can be submitted for up to five tax years prior to the current tax year if: (1) the application is submitted within 60 days after the county assessor mails notice of additional taxes owed, or (2) at any time if no notice is mailed. ORS 307.162(2)(b)(A)(i)-(ii).

Plaintiff argues that ORS 307.162(2)(A)(i) applies because it filed its claim within 60 days after the county assessor mailed notice of additional taxes. Plaintiff cites *Washington County Assessor v. Christ Gospel Church of Portland,* 21 OTR 452 (2014), where the court acknowledged legislative intent to extend late filing periods. However, the court clarified that the "current tax year" in ORS 307.162(2)(b)(A) refers to the start of the five-year period for eligible prior tax years. Since Plaintiff seeks an exemption for the 2022-23 tax year, ORS 307.162(2)(b)(A) applies only to five tax years preceding prior to the 2022-23 tax year. Therefore, Plaintiff cannot use ORS 307.162(2)(b)(A)(i) to claim relief for the 2022-23 tax year.

III.     CONCLUSION

The court finds that Plaintiff was required to file a new property tax exemption application for tax year 2022-23 following Rose Haven's departure and failed to do so by the statutory deadline. The court also finds that the filing exceptions found in ORS 307.162(2)(b)(A) are not applicable to Plaintiff's circumstances. Accordingly, Defendant correctly denied Plaintiff's property tax exemption for the 2022-23 tax year. Now, therefore,

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment is granted. Plaintiff is not eligible for a property tax exemption for the 2022-23 tax year for the subject property.

IT IS FURTHER ORDERED that the court will schedule a case management conference by a separate notice to discuss the remaining issue(s) in this appeal.

_____
RICHARD DAVIS
MAGISTRATE

*This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.*

*This document was signed by Magistrate Richard Davis and entered on October 24, 2024.*